UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

## Case Number: 10-21166-CIV-MARTINEZ-BANDSTRA

JUAN SUCHITE, et al.,

      Plaintiff,

vs.

CHRIS KLEPPIN, ESQ., individually,
GLASSER, BORETH & KLEPPIN, P.A.,
TECTA AMERICA SOUTH FLORIDA, INC.,
f/k/a Weiss & Woolrich Southern Enterprises,
Inc., before merger, and HENRY GEMBALA,
individually,

      Defendant.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendants' Motions for Summary Judgment

**(D.E. No. 95, 96)** and Plaintiffs' Renewed Motion for Partial Summary Judgment on Li[ability]

**(D.E. No. 196)**. This is a case for Fair Labor Standards Act ("FLSA") retaliation.  Plaintiffs

allege that actions taken by Defendants in underlying FLSA cases, *Barrera et al. v. Woolrich*

*Southern Enterprises, Inc.*, Case No. 09-21841-CIV-GRAHAM, *Ramos et al. v. Weiss &*

*Woolrich Southern Enterprises Inc. et al.*, Case No. 09-22431-CIV-HUCK, and *Orellana v.*

*Tecta America South Florida, Inc.*, Case No. 10-20137-CIV-MORENO, as well as filings in this

case, constitute unlawful retaliation under the Fair Labor Standard Act ("FLSA").  In those

underlying cases, Defendants Chris Kleppin ("Kleppin") and Glasser, Boreth & Kleppin P.A.

acted as counsel for their co-Defendants in this case, Tecta America South Florida, Inc. and

Henry Gembala.

## I. Factual and Procedural Background[1]

Plaintiffs Juan Ramos, Jorge Delgado, Luis Fernando Ramirez, Carlos Menjivar, Marcial

Antonio Rugama, Jorge Barrera, Nelson Giovani Vega, Danilo Ramos, William Robert

Fernandez, Gustavo Lagos, Juan Suchite, Alex Figueroa, Emilio Suarez, Jose Hernandez,

Teodulo Ramirez Mata, Javier Menjivar, and Jose Rivera (collectively "Plaintiffs") are illegal

aliens not permitted to work in this country. Their status as being in this country illegally is

unlikely to change at any point during the pendency of the litigation. Plaintiffs testified that they

left their home countries with the specific intent to enter this country illegally and to work here

illegally. Plaintiff Figueroa was actively sought by the Department of Homeland Security for

failing to appear at a federal immigration proceeding. Plaintiff Danilo Ramos was the only

Plaintiff who had entered the country illegally twice at the time of the statements at issue. He

was arrested and deported shortly after December 4, 2009.

Plaintiffs point to three different actions which they allege constitute unlawful retaliation.

The first action involves statements made by Defendant Kleppin during a hearing in the

*Ramos* action. On February 16, 2010, Defendant Kleppin had the following exchange with Judge

Huck:

> Mr. Kleppin: Tomorrow we have a settlement conference before Judge O'Sullivan. The
> plaintiffs in this case are illegal immigrants. They're fugitives from justice. I believe we
> have a duty to raise this with the Court or contact the U.S. Attorney's Office –
>
> The Court: That has nothing to do with me. I do know this. The law says you still have
> to pay them, whether they're here legally or illegally.
>
> [Discussion occurs regarding the law.]

---

[1] Where not otherwise cited, the facts derive from the parties' statements of undisputed
facts or the transcripts of the underlying proceedings.

The Court: If you are right on that law then you should file a motion for summary judgment.

Mr. Kleppin: I have. It's pending before you.

The Court: Okay.

Mr. Kleppin: My concern is they are going to be coming into a Federal Courthouse –

The Court: What am I to do about it?

Mr. Kleppin: Well, Your Honor, I had a trial with you where it came out a plaintiff was committing tax fraud and you said from the bench that you had to refer that to the United States Attorney's Office. You said that your judicial cannons require you to do that. That is why I am raising this before you now –

The Court: If you think there is something wrong you do whatever it is you think you need to do.

The second action involves lines of questioning Mr. Kleppin used during depositions in the underlying actions. During the depositions, Mr. Kleppin asked questions about the Plaintiffs' immigration status and about how they illegally entered the United States. This included questions about the "coyotes" who brought them across the border, whether they swam across the river, and what they were instructed to do if they encountered border patrol.

The third action which Plaintiffs assert constitutes retaliation is the filing by Defendants of a motion to dismiss in this case in which Defendants asked the Court to refer the Plaintiffs and their attorneys for an investigation into whether they committed misprision of a felony or harboring and concealing illegal aliens. (D.E. No. 17.) This motion was filed on June 2, 2010. (D.E. No. 17.) On September 3, 2010, Plaintiffs moved to amend their complaint to add the motion to dismiss to the retaliation claim. (D.E. No. 39.) Defendants subsequently withdrew the portion of the motion to dismiss regarding Plaintiffs' immigration status. (D.E. No. 44.)

Mr. Kleppin testified that when he requested that the court refer the Plaintiffs and their attorneys for criminal investigation into their conduct, he believed that it was a felony to enter the United States illegally. (Kleppin Dep. 131.) He testified that he did not learn that first-time illegal entry into the United States was a misdemeanor until after Plaintiffs filed a response to Defendants' motion for summary judgment. (Kleppin Dep. 131, 134.) He testified that he also believed the conspiracy to smuggle the illegal aliens into the United States and to get them false Social Security documents was a felony, and that the people who were smuggled into the country were themselves guilty of that felony. (Kleppin Dep. 132-33.) He stated that although he had not researched the statute, he "used to work for Roy Black for a year while I was in law school and I have some knowledge of conspiracy law." (Kleppin Dep. 133-34.)

Kleppin testified that a desire to make the pending FLSA claim go away was "not any part of the reason why I said what I said to Judge Huck." (Kleppin Dep. 140.) Kleppin testified that he thought the rules regulating the Florida bar required disclosure, safety issues in the courthouse required disclosure, and the misprision of a felony statute required it. (Kleppin Dep. 140.) Kleppin testified that he made the statement to Judge Huck before a settlement conference, and he did it because he was concerned that the Plaintiffs would be coming into the courthouse. (Kleppin Dep. 135.) He testified that he did not know how they would gain entry. (Kleppin Dep. 135.) Kleppin testified as follows:

> my concern was if anything happens, anything, and I knew about all of this and I didn't say anything, I just felt that I would be crucified. And I felt that if I just tell the Court and he can alert the marshals and they can have extra security or — I didn't know what the judge was going to say or do. I had no idea. I just wanted it off my chest. I didn't want anyone coming back and saying, Someone has been hurt and if you'd said something, it would have prevented it. And I didn't want someone coming back and saying, You know what? You're just as guilty as any of them because you knew all this was going on. You

-4-

didn't say anything. This is misprision of a felony and you profited off this for months because you litigated these cases. You charged your clients money. And I'm not putting my license or freedom at risk. . . . I feel I was compelled to make that statement for ethical, moral and legal reasons. There's Supreme Court decisions that say that every citizen of this country has a duty that's incumbent upon them to report crime . . . and I read these articles in the Bar Journal where lawyers are being disbarred because they've been conviction of misprision of a felony because . . . they knew something else was illegal going on [sic] and didn't say anything.

(Kleppin Dep. 135-36.) With respect to safety, Kleppin testified that "they really live on the fringes of society. They won't even tell me their cell phone numbers. They won't tell me so much information about them. They're clearly on the lam." (Kleppin Dep. 170.) He testified that he was concerned about his safety with them. (Kleppin Dep. 170.) He testified that he was concerned about them entering a federal courthouse under false pretenses. (Kleppin Dep. 172.) He testified he knew the Plaintiffs had false identification. (Kleppin Dep. 173.) He testified that in the courthouse lobby he once heard Plaintiffs' counsel telling a U.S. Marshal "They're my clients and I'm vouching for them. Let them in." (Kleppin Dep. 174.)

Kleppin also testified that he asked that the Plaintiffs' counsel be investigated because he believed that Plaintiffs' counsel was deliberately working to conceal and transport the Plaintiffs to minimize their chances of getting caught and deported. (Kleppin Dep. 183.)

With respect to misprision of a felony, Kleppin testified that he was concerned that he could be accused of that crime for inviting the Plaintiffs to his law offices and providing them with food and water and rest while he billed his clients for their depositions. (Kleppin Dep. 192.) He testified that he was concerned someone would tell him that was active concealment. (Kleppin Dep. 192.) Kleppin testified that the same concerns motivated his request in this case that the undersigned refer Plaintiffs to the U.S. Attorney's Office. (Kleppin Dep. 154.)

-5-

Kleppin testified that even if illegal aliens can sue for overtime, he still had a legal duty and a duty of candor to report their immigration status to the Court, because suing for overtime "doesn't mean they have total protection from other laws [such as] income tax evasion [and] Social Security fraud." (Kleppin Dep. 159.)

Kleppin testified that in a prior trial when he impeached a plaintiff about not filing tax returns, Judge Huck "was livid" and referred the matter to the U.S. Attorney's Office. (Kleppin Dep. 137.)   Kleppin did not contact the U.S. Attorney's Office about the Plaintiffs himself.  He testified he believed he discharged his duty by informing the judge. (Kleppin Dep. 165-66.)

Kleppin also testified that he believed it was possible for FLSA plaintiffs who left the country to obtain a visa in order to return and testify. (Kleppin Dep. 141, 149.) He testified that he believed it was possible that the Eleventh Circuit would hold that illegal immigrants had to surrender and be dealt with through the immigration process while being permitted to sue for overtime. (Kleppin Dep. 160-61.)

## II. Standard

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  By its very terms, this standard provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  An

-6-

issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find

for the non-moving party. *Anderson*, 477 U.S. at 248; *Matsushita Electric Indus. Co.,* 475 U.S.

at 586. It is "material" if it might affect the outcome of the case under the governing law.

*Anderson*, 477 U.S. at 248. In addition, in considering a motion for summary judgment, the

Court is required to view the evidence in the light most favorable to the non-moving party. *Id.* at

255.

      If the moving party bears the burden of proof at trial, the moving party must establish all

essential elements of the claim or defense in order to obtain summary judgment. *See United*

*States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 2d 1428, 1438

(11th Cir. 1991). The moving party "'must support its motion with credible evidence . . . that

would entitle it to a directed verdict if not controverted at trial.'" *Id.* (quoting *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)). "If the moving party makes such an

affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response,

'come[s] forward with significant, probative evidence demonstrating the existence of a triable

issue of fact.'" *Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 3d at 1438

(quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.3d 1472, 1477 (11th Cir. 1991)).

*See also* Fed. R. Civ. P. 56(e).

      In contrast, if the non-moving party bears the burden of proof at trial, the moving party

may obtain summary judgment simply by establishing the nonexistence of a genuine issue of

material fact as to any essential element of a non-moving party's claim or affirmative defense.

*Celotex*, 477 U.S. at 324. When the non-moving party bears the burden of proof, the moving party

does not have to "support its motion with affidavits or other similar material *negating* the

opponent's claim." *Id.* at 323 (emphasis in original). The moving party may discharge its burden in this situation by showing the Court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 324. Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must "go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### III. Analysis

The FLSA provides that, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or . . . any individual, . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The FLSA also protects former employees from retaliation by their former employers. *Smith v. BellSouth Telecommunications, Inc.*, 273 F.3d 1303, 1309 (11th Cir. 2001); *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 147 (6th Cir. 1977). With respect to the circumstances of this case, the Court notes that generally speaking "[t]he reporting of any violation of the criminal laws is conduct which ordinarily should be encouraged, not penalized." *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 895 (1984). Nevertheless, doing so out of retaliatory animus may be unlawful. *Id.*

A.    **Litigation Privilege**

Florida courts apply a "litigation privilege," which "affords absolute immunity for acts

occurring during the course of judicial proceedings." *Jackson v. BellSouth Telecommunications*,

372 F.3d 1250, 1274 (11th Cir. 2004). "The privilege initially developed to protect litigants and

attorneys from liability for acts of defamation, but has since been extended to cover all acts related

to and occurring within judicial proceedings." *Jackson v. BellSouth Telecommunications*, 372 F.

3d 1250, 1274 (11th Cir. 2004). As set forth by the Florida Supreme Court,

> absolute immunity must be afforded to any act occurring during the course of a judicial
> proceeding, regardless of whether the act involves a defamatory statement or other tortious
> behavior such as the alleged misconduct at issue, so long as the act has some relation to
> the proceeding.

*Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So.2d

606, 608 (Fla. 1994).

Defendants assert Plaintiffs are barred from prevailing on their federal retaliation claim by

a state litigation privilege. However, "[a] state absolute privilege purporting to confer immunity

from suit cannot defeat a federal cause of action." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th

Cir. 1998); *accord Kimes v. Stone*, 84 F.3d 1121, 1127 (9th Cir. 1996) (finding that California's

litigation privilege did not bar plaintiff's suit under 42 U.S.C. § 1983); *Rosania v. Taco Bell of*

*America, Inc.*, 303 F. Supp. 2d 878, 888-89 (N.D. Ohio 2004) (finding that a litigation privilege

did not bar plaintiff's retaliation claim under the FMLA, which was based on Defendant's filing of

counterclaims); *see also Martinez v. California*, 444 U.S. 277, 284 n. 8 (1980) (stating that "[a]

construction of the federal statute which permitted a state immunity defense to have controlling

effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the

Constitution insures that the proper construction may be enforced."). In such circumstances, "a state privilege must yield." *Blevins v. Hudson & Keyse, Inc.*, 395 F. Supp. 2d 662, 667 (S.D. Ohio 2004); *accord Olivas v. A Little Havana Check Cash, Inc.*, Case No. 05-22599-CIV-JORDAN.

Defendants assert that the Eleventh Circuit applied the litigation privilege to a federal cause of action in *Williams v. Carney*, 157 Fed. Appx. 103 (11th Cir. 2005). To the contrary, the Eleventh Circuit's holding in *Williams* makes it clear that they are applying Florida's litigation privilege to the state tort claims rather than the federal cause of action. *See Williams*, 157 Fed. Appx. at 108 (stating that the plaintiff "based his *state tort law claims* on an attorney's conduct at an aborted deposition and at a subsequent hearing. . . . Such conduct by an attorney at a judicial proceeding is protected by absolute immunity under Florida's litigation privilege.") (emphasis added).

To the extent that Defendants argue that the Court should recognize a federal common law privilege modeled on the state law privilege, the Seventh Circuit addressed that argument in *Steffes*. The Seventh Circuit declined to apply an absolute privilege to federal claims for retaliation. *Steffes*, 144 F.3d at 1076. The Seventh Circuit stated that although "litigation tactics for the most part will not give rise to actionable retaliation," the appeals court was unwilling "to foreclose the possibility that some actions taken in the course of litigation could constitute retaliation. . . ." *Id.* This Court is similarly unwilling to apply an absolute litigation privilege to an FLSA retaliation claim.

**B.     FLSA Claim**

"Retaliation claims under the FLSA are analyzed using the familiar *McDonnell Douglas* framework applied to retaliation claims under Title VII, the ADEA and the ADA." *Burnette v.*

-10-

*Northside Hosp.*, 342 F. Supp. 2d 1128, 1133 (N.D. Ga. 2004). In order to demonstrate a prima

facie case of retaliation under the FLSA, Plaintiffs must demonstrate (1) that they engaged in

protected activity under the FLSA; (2) that they subsequently suffered an adverse action by their

employer; and (3) that a causal connection existed between the employees' activity and the

adverse action. *Wolf v. Coca-Cola Co.*, 200 F. 3d 1337, 1342-43 (11th Cir. 2000). If a plaintiff

demonstrates a prima facie case, a defendant has the burden of coming forward with a legitimate

non-retaliatory reason for their adverse employment action. *Id.* If Defendants meet their burden,

the burden then shifts back to Plaintiffs to demonstrate that the proffered non-retaliatory reason is

a pretext. *Id.*

It is undisputed that the first factor of the prima facie case has been met. Defendants,

however, assert that Plaintiffs have not proffered evidence of an adverse action or of causation.

1.     Adverse Action

For an action of an employer to be considered adverse and retaliatory, the employee must

prove that the action would "dissuade a reasonable worker from making or supporting a charge of

discrimination." *Burlington N. & Santa Fey Ry. Co. v. White*, 548 U.S. 63, 68 (2006) (decided in

the Title VII context). Requesting in open court that a judge refer a plaintiff for criminal

investigation and possible prosecution or deportation would dissuade a reasonable worker from

making or supporting a charge of discrimination. A reasonable worker would believe that the

request could result in him being referred to law enforcement. A request made in a written

pleading such as the motion to dismiss is a closer question, particularly when the worker and his

attorney have an opportunity to research the issue and respond in writing and when the request is

voluntarily withdrawn following the objection of counsel. Because the request could raise

-11-

legitimate anxiety about criminal prosecution and deportation, however, the Court will consider it an adverse action for the purpose of this motion.

On the other hand, the deposition questions that Plaintiffs point to as adverse actions, questions regarding the Plaintiffs' immigration status and the routes they took into the United States, seem less likely to deter a reasonable worker from making or supporting a charge. Those questions were asked outside the presence of the judge, outside the presence of law enforcement, and with the Plaintiffs' attorney present to defend the deposition. Plaintiffs' counsel did lodge certain objections during the depositions, which should have served to make a reasonable worker aware that their attorney could object to deposition questions.[2] The Court concludes that, while being deposed is probably a stressful experience for most litigants, the deposition questions that Plaintiff points to would not add to that stress enough to dissuade a reasonable worker from making or supporting an FLSA claim. The dissuasion would occur only with a subsequent threat to report the matter to the United States Attorney's Office for prosecution. Therefore, the Court finds that Defendants' requests to report Plaintiffs to the United States Attorney's Office are adverse actions, but the deposition questions are not.[3]

---

[2] There is no evidence before the Court regarding whether Plaintiffs' counsel informed Plaintiffs that Plaintiffs' counsel could seek protective orders regarding certain discovery requests, including the subject matter of deposition questions.

[3] The Court notes that it has not combed the complete depositions of more than twenty Plaintiffs for potentially adverse questions. Instead, the Court has focused on those portions of the depositions, such as those asking about the use of "coyotes" to cross the border, that Plaintiffs have pointed to in their pleadings and briefs. The Court is not required to "scour the record" looking for evidence to support the parties' arguments. *Powell v. Carey Intern., Inc.*, 483 F. Supp. 2d 1168, 1185 (S.D. Fla. 2007) (citing *Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 469 (5th Cir. 2003)).

2.    Causation

Defendants also assert that there is no causation. For the purpose of evaluating the prima

facie case, the Court will consider whether there was a "but for" causal connection between the

adverse actions and the assertion of rights. *See Wolf v. Coca-Cola Co.*, 200 F.3d at 1343 ("In

demonstrating causation, the plaintiff must prove that the adverse action would not have been

taken 'but for' the assertion of FLSA rights.") (citing *Reich v. Davis*, 50 F.3d 962, 965-66 (11th

Cir.1995)).[4] In this case, it is clear there was a "but for" cause. The statements complained of

were made solely in the context of the underlying FLSA legal proceedings. They were made by

defense counsel in written filings and oral statements to the court. If the Plaintiffs had not brought

cases in an attempt to vindicate their FLSA rights, then the Defendants would not have urged the

courts in those cases to refer Plaintiffs to the United States Attorney's Office. The Court will

accordingly move on to Defendants' articulated legitimate reason for making the arguments.

3.    Articulated Non-Retaliatory Reason

In this case, Defendant Kleppin testified that he did not have retaliatory motives and that

he had a number of legitimate non-retaliatory reasons for his statements to Judge Huck and his

filings in this case. Kleppin testified that his reasons were, first, that he believed the ethics rules

governing the Florida bar required him to report them. Second, he testified that he believed he

had a legal duty to report them and might himself be guilty of misprision of a felony if he failed to

---

[4] Plaintiffs may prevail on an FLSA retaliation claim if Defendants leveled legal charges against them that (1) were brought for a retaliatory motive and (2) lacked reasonable basis in fact or law. *Munroe*, 2009 WL 413721, at *8 (citing *Darveau v. Detecon, Inc.*, 515 F.3d 334, 343-44 (4th Cir. 2008)). Although the analysis in *Munroe* and *Darveau* is relevant to causation, it delves into questions of motive that fit better in the second and third stages of the burden-shifting analysis. The Court will therefore consider motive and reasonable basis in fact or law in analyzing pretext.

do so. Third, he testified that he had safety concerns regarding the Plaintiffs' entry into the federal courthouse, specifically given that he knew they might use false identification and suspected that Plaintiffs' counsel would put pressure on the U.S. Marshals to admit them.

To the extent that these reasons are subjective, "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000).[5] In this case, Defendant Kleppin's articulated reasons are sufficiently specific to permit Plaintiffs an opportunity to show that they are pretextual.

4.     Pretext

"The plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). A reason is not a pretext for discrimination unless it is shown both that the reason was false, and that retaliation was the real reason. *Brooks v. County Com'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (discrimination case).

"If an employer articulates multiple legitimate reasons for the adverse action, the plaintiff must present sufficient evidence that all of those reasons are pretextual." *Phillips v. Aaron Rents, Inc.*, 262 Fed. Appx. 202, 208 (11th Cir. 2008) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc)); *accord Ash v. Tyson Foods, Inc.*, 392 Fed. Appx. 817, 825 (11th

---

[5] The Court notes that it is not necessary for Defendants to articulate legitimate non-retaliatory reasons for their deposition questions, because there is no dispute of fact regarding whether or not they were adverse.

Cir. 2010) ("The law of this circuit is that a plaintiff must make an evidentiary showing creating a genuine issue of fact as to pretext for each of the defendant's proffered reasons, not merely for some or most of them.").

First, the Court will consider whether there is evidence of pretext regarding Defendant Kleppin's articulated reason that he had an ethical duty to report that Plaintiffs were illegal immigrants.[6] Rule 3-4.3 of the Florida Rules of Professional Conduct states that, "The commission by a lawyer of any act that is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney's relations as an attorney or otherwise, whether committed within or outside the state of Florida, and whether or not the act is a felony or misdemeanor, may constitute a cause for discipline." Rule 4-8.4 states that a lawyer shall not "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects" or "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Plaintiffs have pointed to Defendant Kleppin's deposition and to the applicable rules to show that no circumstance exists wherein Defendant Kleppin would have to report the Plaintiffs to the court in order to comply with these rules. Providing Plaintiffs with water during their depositions does not constitute a criminal act or involve dishonesty, fraud, deceit, or misrepresentation. It is certainly not unlawful or contrary to honesty and justice. Accordingly, Plaintiffs have presented some evidence that this reason was not the real reason for Defendant Kleppin's conduct.

---

[6] The Court notes that Defendants also attempted to refer Plaintiffs' counsel for criminal investigation. Despite a lot of argument between counsel regarding the propriety and legality of Plaintiffs' counsel's conduct, those accusations are not directly at issue in this case. Accordingly, Rule 4-8.3 on reporting the professional misconduct of other lawyers is not applicable in this pretext analysis.

-15-

Next, the Court will address Defendants' articulated reason concerning a legal duty to report the crime.  The statute on Misprision of a Felony to which Defendants refer provides as follows:

> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. § 4.  By its plain language, this statute deals with felonies and the concealment of felonies only.  Entering the United States illegally once is a misdemeanor; the crime only becomes a felony when someone enters the United States illegally more than once.  8 U.S.C. § 1325(a).  Defendant Kleppin's speculation about conspiracies notwithstanding, he openly admitted that he never did any research to determine whether Plaintiffs' crimes were felonies.  Instead he stated that he "used to work for Roy Black . . . while I was in law school."  Furthermore, Defendant Kleppin has not alleged that he concealed the actions of Defendants or their attorneys.

The fact that Defendant Kleppin was mistaken about the illegality of Plaintiffs' actions and about the extent to which he himself could be guilty of misprision of a felony for failing to report them does not, in itself, necessarily constitute evidence of pretext.  *See Nix v. WLCY Radio/Rahall Comm's*, 738 F.2d 1181, 1187 (11th Cir. 1984) (A defendant may take an adverse action for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a [retaliatory] reason.")  However, the fact that Defendant Kleppin, an attorney, never felt the need to research the crimes in question casts doubt on his assertion that he was concerned that his knowledge of Plaintiffs actions was "putting my license or freedom at risk."  He made representations to the Court that the Plaintiffs were felons, and yet he admits he

-16-

never looked up the statute to confirm that they were felons.  If Defendant Kleppin was truly motivated by a perceived legal obligation, then his legal obligation would logically extend to legal research on the crimes involved.[7]  Plaintiffs have therefore put forth some evidence of pretext regarding Defendant Kleppin's second articulated reasons for his actions.

Plaintiffs have not, however, put forth any evidence whatsoever that Defendant Kleppin's concern about courthouse safety was a pretext.  Kleppin testified that he knew that the Plaintiffs had false identification that they might use on entering the courthouse, that the Plaintiffs "lived on the fringes" and refused to share information about themselves, and that he felt threatened by them.  Kleppin also testified that he witnessed Plaintiffs' counsel vouch for Plaintiffs to the court security officers and, successfully or not, instruct those officers to admit Plaintiffs into the courthouse.  Kleppin presented evidence that he believed that Plaintiffs would use false identification to enter the courthouse to attend proceedings in this case and the other underlying cases and that Plaintiffs' counsel would help them to do so.  Plaintiffs have not addressed this argument in any meaningful way.  They have not presented any evidence that Defendant Kleppin's desire to inform the Court regarding Plaintiffs' status in the interests of courthouse safety was a pretext.  As discussed above, Plaintiffs must show that every articulated reason is a pretext in order to prevail.  *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).  Therefore, Plaintiff's failure to produce evidence that Defendant Kleppin's safety concerns were a pretext mandates granting summary judgment.

---

[7] The Court notes that Defendant Kleppin nevertheless may have sincerely believed that Plaintiffs were felons and that he was exposed to liability for misprision of a felony.  His failure to research the issue may have been merely negligent.  However, the evidence before the Court is sufficient for the Court to find a dispute of material fact on the issue.

-17-

Finally, Plaintiffs have not met the requirement that they present evidence that the real motivation for Defendant Kleppin's actions was retaliation.[8] *See Brooks*, 446 F.3d at 1163. Defendant Kleppin testified as to his basis for believing that Plaintiffs could still prosecute this action if they left the United States, and Plaintiffs have not come forward with evidence showing that his reasons were pretextual. Accordingly, it is

**ORDERED AND ADJUDGED** that

1. Defendants' Motions for Summary Judgment **(D.E. No. 95, 96)** are **GRANTED**.

2. Plaintiffs' Renewed Motion for Partial Summary Judgment on Li[ability] **(D.E. No. 196)** is **DENIED.**

3. This case is CLOSED, and all pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this _5_ day of May, 2011.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Bandstra
All Counsel of Record

---

[8] Defendant Kleppin's legal argument that illegal aliens may not state a claim under the FLSA is without merit. *See Patel v. Quality Inn South*, 846 F.2d 700 (11th Cir. 1988) (holding that illegal aliens are "employees" protected under the FLSA). Raising this argument is not evidence of a retaliatory motive, however. It is possible that the controlling law could change. Defense counsel in FLSA cases can make arguments and preserve objections even on issues of settled law without having a retaliatory or wrongful motive.

-18-